Ervin G. Bailey and Carrie H. Bailey v. Commissioner.
Bailey v. Commissioner
Docket Nos. 95029, 3476-62.
United States Tax Court
T.C. Memo 1963-251; 1963 Tax Ct. Memo LEXIS 92; 22 T.C.M. (CCH) 1255; T.C.M. (RIA) 63251; September 16, 1963
*92 William J. O'Brien, 4 Westway, Hartsdale, N. Y., and Henry T. Kirkebye, for the petitioners. Arthur Pelikow, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioners' income tax for 1957-1960 in the amounts of $8,170.32 (plus an increase of $1,409.73 claimed in Amendment to Answer), $4,915.26, $3,680.20 and $5,011.09, respectively. The principal question is whether Ervin G. Bailey's expenses, proximately related to his activities as an inventor, in the amounts of $13,001.94, $2,975.82, $3,608.78 and $4,966.93 during the tax years 1957-1960, respectively, were deductible as ordinary and necessary business expenses. A second question is whether certain other expenses were likewise deductible. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Petitioners, husband and wife, are residents of Easton, Pennsylvania. They filed joint income tax returns for the years 1957, 1958, 1959 and 1960 with the director of internal revenue, Scranton, Pennsylvania. Ervin G. Bailey will sometimes hereinafter be referred to as the petitioner. Petitioner *93 was born in 1880. He is a graduate mechanical engineer. He is and has been for over 50 years an inventor of note, having developed and obtained numerous patents, particularly in steam and combustion engineering. He holds several honorary degrees and has received numerous engineering awards and academic honors; he has been a leader in various professional engineering societies. In January 1916, petitioner organized the Bailey Meter Company to manufacture gas flow meters, combustion control equipment, and a variety of recording and indicating devices for pressure, temperature, and other characteristics of working fluids. Some of the patents obtained by him were used by this company. The Bailey Meter Company was acquired by Babcock & Wilcox Company in 1926 for its subsidiary, the Fuller Lehigh Company, which later merged with Babcock & Wilcox Company. The principal business of Babcock & Wilcox Company is the manufacture of steam generating units and auxiliary units that connect thereto. On August 2, 1932, petitioner entered into an agreement with Babcock & Wilcox Company which provided in part as follows: I will perform for the company such duties as may be designated by it from *94 time to time and will communicate to it all inventions made or conceived by me while in the employ of the Company, and which shall be within the existing or contemplated scope of the Company's business, as well as that of any Company allied with it during the period of my employment, and I will also assist the Company and its nominees in every proper way (entirely at the Company's expense) to obtain patents for these inventions in any and all countries, and will execute all proper papers for use in applying for and obtaining such patents thereon as the Company may desire, together with assignments thereof to the Company or its nominees, all at the Company's expense. These inventions are to be and remain the property of the Company or its nominees, whether patented or not. It is understood by me that, for the purposes of this agreement, the payment of sums to me by the Company, either as pension or as continuation of salary or wages, without the use of my services, shall be deemed employment by the Company. The foregoing was a form agreement which all engineering employees were asked to sign. Petitioner held the office of vice president in charge of engineering with the Babcock *95 & Wilcox Company from 1932 until he resigned on December 31, 1951. Thereafter, until he retired in April 1956, he was a director and consultant of the company. Patents which petitioner obtained for Babcock & Wilcox Company during the years he was employed by it were concerned with obtaining greater fuel burning efficiency from steam generation. Upon retirement petitioner received a pension from Babcock & Wilcox Company which amounted to $15,622.08 during each of the tax years. Also, as of December 31, 1957, he was the largest individual stockholder, owning 1.8 percent of the total outstanding stock. During the tax years 1957-1960, petitioners reported dividends received in the aggregate amounts of $139,766.49, $142,778.86, $148,394.21, and $174,098.02; and of those amounts the following were received from Babcock & Wilcox Company: $105,597.50, $108,463.25, $108,980.50, and $129,653.10. Since petitioner's retirement from Babcock & Wilcox Company in April 1956 he has been personally active as an inventor, and has been engaged as an individual in mechanical engineering, particularly in the selection, mining and use of burning coal for iron, steel, cement and other metallurgical purposes. *96 His objective has been to develop ideas and processes which would be patentable, and it has been his intention to put any patents obtained to business and incomeproducing uses through companies other than Babcock & Wilcox Company. He filed an application on June 1, 1959, for a patent dealing with a certain fuel burning process, and a patent was granted on November 1, 1962, in respect thereof to Bailey Inventions, Inc., a wholly owned corporation, as assignee of petitioner. He has also applied to the United States Patent Office for other patents on some of the foregoing processes and has five or six patents pending. Petitioner had been told by officials of Babcock & Wilcox Company that the work he was doing "was entirely out of their field and they are not interested in going into that business." However, it is the opinion of patent counsel of Babcock & Wilcox Company that the foregoing patent and related activities are within either the existing or contemplated scope of the company's activities, and it would be his recommendation that the company is entitled under the foregoing 1932 agreement to an assignment of the patent obtained through petitioner's activities. Petitioner has *97 not yet received any income from any of his inventions growing out of his work during 1957-1960, nor has he taken any steps yet to exploit such inventions either alone or in any other manner. During the years 1957-1960, petitioner incurred the following expenses which were proximately related to his inventive activities looking toward the obtaining of patents: $13,001.94 in 1957, $2,975.82 in 1958, $3,608.78 in 1959, and $4,966.93 in 1960. The foregoing expenses were deducted by petitioners on Schedule C of each of the returns in question which was entitled "Profit (or Loss) From Business or Profession". The only income reported on that schedule was the pension which petitioner received from Babcock & Wilcox Company. In addition to these expenses on Schedule C, there were deducted as "Other Deductions" elsewhere on petitioners' returns for 1957-1960 a variety of other items in the aggregate amounts of $2,680.19, $5,010.36, $2,241.77, and $3,358.67, respectively. In the Amendment to Answer for 1957, the Commissioner determined that of the $2,680.19 "Other Deductions", there should be disallowed $2,073.14; and in the deficiency notice for the years 1958-1960, he determined that of *98 the respective "Other Deductions" claimed there should be disallowed $3,975.36 for 1958, $1,694.18 for 1959, and $1,961.21 for 1960. The amounts disallowed were deducted as business expenses and involved primarily dues and other expenses with respect to engineering societies and subscriptions to various periodicals. All of the expenses claimed on the returns for 1957-1960 as "Other Deductions" were in fact incurred during the respective years. On brief, the Commissioner has conceded the deductibility of six items included in the amounts disallowed. These items are in the aggregate amounts of $1,555.42, $3,547.35, $1,239.05, and $1,377.45 for the years 1957-1960, respectively. Thus, there remains in dispute the deductibility of the remaining items aggregating $517.72 for 1957, $428.01 for 1958, $455.13 for 1959, and $583.76 for 1960. Opinion RAUM, Judge: 1. Expenses relating to inventive activities. The Commissioner disallowed deductions in the aggregate amounts of $13,001.94, $2,975.82, $3,608.78, and $4,966.93 for the years 1957-1960, respectively. The components of these deductions are set forth in the record, and, although it might be arguable that several of them did not in *99 fact relate to petitioner's activities as an inventor, no such issue has been raised. In accordance with an agreement of counsel at the hearing, we have made a finding of fact that these expenses were proximately related to petitioner's inventive activities looking toward the obtaining of patents. We hold that such amounts are deductible expenses incurred in carrying on a trade or business. Certainly, one may be engaged in business as an inventor, with the expectation of profitable exploitation of one's inventions through royalties, sale of patents, or otherwise. Cf. . And while the matter may not be completely free from doubt on the evidence before us, we are on the whole satisfied that petitioner's activities after his retirement from Babcock & Wilcox were of sufficiently sustained character to qualify as engaging in the trade or business of an inventor. True, he had not yet received any income from the inventions conceived by him during this period, but we are convinced that he reasonably expected to realize profit from these activities. This case is quite different from john , relied upon by thee taxpayer *100 in Koons, petitioner herein had been an engineer and inventor for a long period of years, and had determined to spend his retirement years in bona fide active scientific pursuit for gain. If he were so devoting his energies, it does not matter that his efforts had not yet begun to pay off, or that he had not yet found a suitable medium for exploiting his inventions. This case is also to be sharply distinguished from that line of cases holding that expenses incurred in investigating a potential new trade or business preparatory to entering therein are not deductible as business expenses. E.g., , affirmed, (C.A. 5). Petitioner herein was already actively engaged in carrying on his trade or business as an inventor. The Government argues that petitioner's inventions properly belonged to Babcock & Wilcox under the 1932 agreement and that petitioner was entitled to reimbursement from Babcock & Wilcox in respect of the expenses incurred. Petitioner's pension, to be sure, did require his being treated as an employee under that agreement, but it is far from clear that his post-retirement inventions were covered *101 by the agreement. The record would permit of either conclusion in this respect, and we think that he reasonably believed that they were not so covered. [1] Moreover, the provision in the agreement that the Company would obtain patents at its own expense in respect of its employees' inventions merely means, in our judgment, that the Company would pay the usual formal expenses required to obtain a patent. This was the view of patent counsel for the Company who appears to have been familiar with many years of practice under the agreement. Nothing in that provision suggests that the Company would pay the expenses incurred by the employee in the course of his inventive activities. Petitioner has not in fact been reimbursed, and we think he is not entitled to any such reimbursement. The contested expenses herein were not reimbursable and were deductible by petitioner. *102 2. "Other Deductions". On petitioner's 1957-1960 returns miscellaneous deductions in the aggregate amounts of $2,680.19, $5,010.36, $2,241.77, and $3,358.67, respectively, were claimed as "Other Deductions". The Commissioner has now conceded the great bulk of these deductions, including the major expenditures for dues and related expenses involving engineering societies, and there remain in controversy only the following amounts: $517.72, $428.01, $455.13, and $583.76. They relate primarily to dues to certain remaining societies and subscriptions to certain periodicals. The evidence in respect of these remaining items is so scanty that we cannot find that any of them represented expenses proximately related to petitioner's business or that they were other than nondeductible personal expenditures. We hold that they are not deductible. Decisions will be entered under Rule 50. Footnotes
1. Even if it be assumed that Babcock & Wilcox would be justified in demanding the assignment of petitioner's inventions to it on the theory that they were within the range of its contemplated activity and were conceived by an employee, the expenses would still be deductible as being reasonably related to that employment.↩